IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

ANN WILDER,

      Plaintiff,

v.

STEPHEN F. AUSTIN STATE
UNIVERSITY,

      Defendant.

NO.9:20-CV-00040-ZJH

## **ORDER**

Pursuant to 28 U.S.C. § 636(c), FED. R. CIV. P. 73, and order of the District Court, this matter is before the undersigned United States Magistrate Judge for all proceedings and entry of judgment in accordance with the consent of the parties. Pending before the court is a *Motion for Partial Summary Judgment* (Doc. No. 47) by Plaintiff Ann Wilder, Ph.D. Also pending before the court are Defendant Stephen F. Austin State University's ("SFA") *Motion to Exclude Evidence of Damages* (Doc. No. 53) and *Motion for Summary Judgment* (Doc. No. 54).

This is an employment discrimination case. Dr. Wilder claims that SFA paid her less than a similarly situated male professor. Further, Dr. Wilder alleges that SFA retaliated against her for reporting the pay disparity by refusing to renew her contract. SFA proposes gender-neutral reasons for the difference in pay, and SFA insists that it offered Dr. Wilder a terminal contract due to numerous complaints lodged against her.

There are genuine disputes of material fact about whether SFA discriminated against Dr. Wilder on the basis of her sex, and whether SFA's nondiscriminatory justifications are valid. Accordingly, the motions for summary judgment are denied with respect to all but one of

Dr. Wilder's claims. SFA is only entitled to summary judgment on Dr. Wilder's disparate treatment claims that are not based on the decision to issue her a terminal contract. Dr. Wilder's claims for wage discrimination, unlawful termination, and retaliation survive. Lastly, SFA's motion to exclude evidence of certain damages is granted, with the caveat that SFA's request to strike an expert's opinion is denied.

## I.   FACTUAL BACKGROUND

SFA's School of Social Work ("SSW") is housed within the College of Liberal and Applied Arts. The SSW is home to approximately fifteen full-time faculty members. At SFA, full-time professors are either tenured or probationary. Probationary faculty members receive annual contracts for each academic year, but SFA can decide not to renew a faculty member's contract "for any lawful reason or no reason."

In September of 2014, Dr. Wilder began working in the SSW as an Assistant Professor. That was a full-time, tenure-track (probationary) position. When she was hired, Dr. Wilder did not yet have her doctoral degree; she received her Ph.D. in Sociology in the Spring of 2016. At all relevant times, her direct supervisor was Dr. Emmerentie Oliphant (female). Dr. Freddie Avant (male) served as the Director of the SSW, and Dr. Brian Murphy (male) served as the Dean of the College of Liberal and Applied Arts.

Over the next several years, Dr. Wilder received a number of complaints from students and faculty. In November of 2017, six students filed a harassment complaint against Dr. Wilder, prompting SFA to investigate. Dean Murphy investigated the complaint and concluded that Dr. Wilder's behavior inside and outside the classroom was unprofessional and hostile. Dean Murphy recommended to the Provost, Dr. Steven Bullard (male), that SFA dismiss Dr. Wilder. Dr. Wilder

appealed that decision to the Discrimination Review Board. While her appeal was pending, she was temporarily suspended from teaching, and her office was moved to the library. The Discrimination Review Board ultimately reversed, finding that her behavior did "not rise to the level of harassment" as defined by SFA. The Board, however, recommended that the SSW handle the matter internally as Dr. Wilder may have behaved inappropriately for a faculty member.

Prior to the start of the 2016-2017 academic year, SFA hired Jose Carbajal, Ph.D. (male) as a tenure-track Assistant Professor in the SSW. When SFA was hiring Dr. Carbajal, Dr. Avant noticed that four Assistant Professors were making less than the $55,000-$65,000 available for Dr. Carbajal's position. Those professors were Dr. Wilder (female)—$53,425;  Dr. Kara Lopez (female)—$53,525; Kristin Bailey-Wallace (female)—$51,500; and Dr. James Morris (male)—$53,435. Dr. Avant sent an email to administrators regarding this potential pay disparity. Dr. Avant asked if it would be possible to pay Dr. Carbajal approximately $56,000 and use the remaining funds in the budget to pay the rest of the Assistant Professors that same salary. That request was denied. Dr. Carbajal was hired at a salary of $58,000. The following table reflects the salaries of Dr. Carbajal and Dr. Wilder while at SFA.

| Academic Year | Dr. Wilder's Salary | Dr. Carbajal's Salary |
|---------------|---------------------|------------------------|
| 2014-2015 | $52,000 | N/A |
| 2015-2016 | $53,425 | N/A |
| 2016-2017 | $54,425 | $58,000 |
| 2017-2018 | $54,425 | $58,000 |
| 2018-2019 | $55,695 (rejected) | $58,000 |
| 2019-2020 | N/A | $62,103 |

Dr. Wilder claims that she raised the issue of unequal pay to her supervisor, Dr. Oliphant, in March of 2018. On June 19, 2018, Dr. Wilder filed a complaint with SFA's human resources department ("HR"). HR notified Dr. Bullard just a few days later. Dr. Bullard assigned an independent investigator—Dr. Timothy O. Bisping, Dean of the Business College—to look into Dr. Wilder's complaint. Dr. Bisping investigated her claim, and he prepared a report that attempted to explain the difference in pay. First, he stated that more funds were available in the budget when Dr. Carbajal was hired because Dr. Carbajal replaced a tenured professor, whereas Dr. Wilder replaced a probationary professor. Second, Dr. Carbajal already had his Ph.D. when he was hired, had prior teaching experience at SFA, and held a certification which Dr. Wilder lacked.[1] Third, Dr. Bisping noted that both Dr. Wilder (female) and Dr. Morris (male) were hired at the same time, at the same starting salary. Accordingly, Dr. Bisping recommended dismissing Dr. Wilder's complaint about unequal pay.

Dr. Bullard accepted that recommendation, and on July 24, 2018, Dr. Bullard signed a terminal contract for Dr. Wilder. That meant Dr. Wilder was offered a final contract to teach during the 2018-2019 academic year, but her contract would not be renewed after that school year. On August 8, 2018, Dean Murphy notified Dr. Wilder that she would be receiving a terminal contract. Dr. Wilder refused to accept the terminal contract and resigned from SFA. She accepted a contract to work as an Assistant Professor at Carlow University for the 2018-2019 academic year. Her salary there was approximately $58,088. She went on to work for the University of Pittsburgh Medical Center at an hourly rate which approximates to $63,420 annually.

---

[1] Dr. Wilder highly disputes that these factors played any role in SFA's decision in 2016 to pay Dr. Carbajal a higher starting salary. Rather, Dr. Wilder claims these reasons are pretextual.

While Dr. Wilder contends that SFA issued her the terminal contract in retaliation for reporting the pay disparity between herself and Dr. Carbajal, SFA claims she was effectively let go due to the numerous complaints about her behavior.

## II.   PROCEDURAL BACKGROUND

On April 22, 2021, Dr. Wilder filed a *Motion for Partial Summary Judgment* with respect to her unequal pay claims under the Equal Pay Act. Doc. No. 47. SFA filed a response (Doc. No. 57), and Dr. Wilder replied (Doc. No. 59).  On April 30, 2021, SFA filed a *Motion to Exclude Evidence of Damages*. Doc. No. 53. Dr. Wilder responded (Doc. No. 56), and SFA replied (Doc. No. 61). On April 30, 2021, SFA also filed a *Motion for Summary Judgment*. Doc. No. 54. Dr. Wilder filed a response (Doc. No. 58), SFA filed a reply (Doc. No. 62), and Dr. Wilder filed a sur-reply (Doc. No. 63).

## III.   SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A genuine dispute about a material fact exists if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  A fact is material when it is relevant or necessary to the outcome of the case.  *Id.*  The moving party bears the initial burden of demonstrating that there are no genuine disputes of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Harvill v. Westward Commc'ns, LLC*, 433 F.3d 428, 433 (5th Cir. 2005). The movant must support its assertion by "citing to particular parts of materials in the record . . . or showing that the materials cited do not establish

the . . . presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(A)-(B).

"If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). "If the movant does, however, meet this burden, the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Id.* at 1075. The nonmovant cannot satisfy its burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

The court resolves any doubts and draws all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *United States ex rel. Longhi v. United States*, 575 F.3d 458, 465 (5th Cir. 2009). But the court "may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000); *Anderson v. Liberty Lobby*, 477 U.S. at 255.

## IV.   <u>ANALYSIS</u>

Dr. Wilder asserts the following claims against SFA: wage discrimination under the Equal Pay Act and Title VII; retaliation under the Equal Pay Act and Title VII; disparate treatment under Title VII; and unlawful termination under Title VII. Title VII of the Civil Rights Act of 1964 makes it unlawful "for an employer to . . . discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The Equal Pay Act ("EPA") proscribes discrimination "between employees on the basis of sex by paying wages to employees

6

. . . at a rate less than the rate at which [the employer] pays wages to employees of the opposite sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d)(1).

Dr. Wilder only moves for summary judgment on her wage discrimination claims under the Equal Pay Act. SFA moves for summary judgment on all of the Plaintiff's claims. Dr. Wilder objects to some evidence in the summary judgment record, and SFA moves to exclude evidence of certain types of damages.

### A.  Objections

Before proceeding any further, the court will address some objections to summary judgment evidence. "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." FED. R. CIV. P. 56(c)(2). In particular, Dr. Wilder objects to SFA's introduction of internal complaints against Dr. Wilder as hearsay. Dr. Wilder also objects to portions of Dr. Avant's declaration on various grounds.

### 1.       Student and Faculty Complaints

The summary judgment record contains nearly 100 pages of student and faculty complaints against Dr. Wilder, spanning from 2014 to 2017. Some complaints contain harsh criticisms, and some students even report traumatic experiences as a result of taking Dr. Wilder's classes. SFA argues that Dr. Wilder's unprofessional conduct constituted a gender-neutral justification for its adverse employment action. Dr. Wilder claims these complaints were insignificant at the time they were made, and are only now being used by SFA as an excuse for its discriminatory conduct.

As such, Dr. Wilder objects to these complaints as inadmissible hearsay. *See* FED. R. EVID. 801, 802. Notably, she is concerned because many of the complaints were anonymously submitted.

But her hearsay objection is without merit. SFA is not using these student complaints for the truth of the matters asserted, but to show the effect on the listener. It does not matter whether the complaints had any veracity—they put SFA on notice of a potential problem with Dr. Wilder's job performance. As such, "these complaints informed SFA's investigation and decision-making." Def.'s Reply at 2, Doc. No. 62. They also go to SFA's state of mind: SFA believed the complaints to be true, and supposedly offered Dr. Wilder a terminal contract as a result. What matters is SFA's subsequent conduct after receiving the complaints (allegedly offering her a terminal contract for a nondiscriminatory reason), not whether the complaints are actually true. Accordingly, Dr. Wilder's hearsay objection is **OVERRULED**.

### 2.      Dr. Avant's Declaration

"An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." FED. R. CIV. P. 56(c)(4). SFA uses Dr. Avant's declaration to support its arguments, especially in response to the Plaintiff's unequal pay claims. In the seventh paragraph of his declaration, Dr. Avant proposes several gender-neutral reasons why Dr. Carbajal received a higher salary than Dr. Wilder. *See* Doc. No. 55-1 at 31. Dr. Wilder objects to this portion of Dr. Avant's declaration for two reasons.

First, Dr. Wilder argues that the court should disregard these statements under the sham affidavit doctrine because they are self-serving and were only offered after she filed her motion for summary judgment. Second, Dr. Wilder argues that the court should exclude the statements under Rule 37(c) because SFA had previously explained the pay differential in a response to an interrogatory, and that response did not include any of Dr. Avant's purported reasons.

a.      *Response to Interrogatory versus Declaration*

During discovery, Dr. Wilder posed the following interrogatory to SFA: "Explain why Defendant paid Dr. Carbajal a hirer [sic] salary than Dr. Wilder in the academic years 2016-17 and 2017-18." Doc. No. 60-1 at 4. Here is SFA's verified response:

> Dr. Carbajal was paid a higher starting salary than Dr. Wilder because more funds were available in the 2016-2017 academic year when he was hired than were available in the 2014-2015 academic year when Dr. Wilder was hired. Dr. Carbajal was hired after a full-time tenured professor who had been teaching for over 30 years had retired, such that more funds were available in the salary line when he was hired. According to the university's 2017-2018 Budget Book, no salary increases were awarded during that academic year. Thus, Dr. Carbajal did not receive a larger salary increase than Dr. Wilder.

Doc. No. 60-1 at 4. In Dr. Avant's declaration, signed the day before SFA filed its motion for summary judgment, he stated the following in paragraph 7:

> Dr. Jose Carbajal was hired as an assistant professor in SSW for the 2016-2017 academic year. While Dr. Wilder was hired to replace an assistant professor, Dr. Carbajal was hired to replace a Full Professor. The Full Professor's departure provided a larger amount of money in the salary line, which enabled SSW to offer a higher salary to the Full Professor's replacement. In addition, Dr. Carbajal was offered a higher salary than Dr. Wilder because he had a Ph.D. in Social Work – not Sociology – at the time of his hiring, he had previous graduate teaching experience in a school of social work at SFA and the University of Texas at Arlington, scholarly presentations and publications, and a certification – Eye Movement Desensitization and Reprocessing (EMDR) – that Dr. Wilder lacked.

Doc. No. 55-1 at 31. Dr. Wilder objects because Dr. Avant's declaration mentions additional reasons for the pay differential that were not mentioned in SFA's answer to the interrogatory.

Some preview might explain why this discrepancy is important. Under the *McDonnell Douglas* framework for Title VII cases, if the employer presents a nondiscriminatory justification for its adverse employment action, the plaintiff must rebut that with evidence tending to show the

justification is pretextual. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 807 (1973). Under the Equal Pay Act, the defendant has the burden to explain any pay disparities between men and women performing the same jobs. *See Siler-Khodr v. Univ. of Tex. Health Sci. Ctr. San Antonio*, 261 F.3d 542, 546 (5th Cir. 2001). Under both statutes, the defendant's rationale for the adverse employment decision is crucial. Whether the court accepts Dr. Avant's version of events will thus affect the court's analysis.

b.      *Sham Affidavit Doctrine*

Dr. Wilder argues that the court should disregard Dr. Avant's statements under the sham affidavit doctrine. "Under the sham affidavit doctrine, a district court may refuse to consider statements made in an affidavit that are 'so markedly inconsistent' with a prior statement as to 'constitute an obvious sham.'" *Winzer v. Kaufman Cnty.*, 916 F.3d 464, 472 (5th Cir. 2019) (quoting *Clark v. Resistoflex Co., A Div. of Unidynamics Corp.*, 854 F.2d 762, 766 (5th Cir. 1988)). The purpose of the doctrine is to prevent a nonmoving party from "manufactur[ing] a dispute of fact merely to defeat a motion for summary judgment." *Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 386 (5th Cir. 2000). Yet, "the sham affidavit doctrine is inappropriate where an 'affidavit supplements, rather than contradicts' an earlier statement." *Winzer*, 916 F.3d at 473 (quoting *Clark*, 854 F.2d at 766). Moreover, "a district court must consider all the evidence before it and cannot disregard a party's affidavit merely because it conflicts to some degree with an earlier statement. In light of the jury's role in resolving questions of credibility, a district court should not reject the content of an affidavit even if it is at odds with statements made earlier." *Id.* at 472 (internal citations and quotation marks omitted).

The court does not find that Dr. Avant's declaration constitutes a sham. Rather than contradict SFA's earlier response, Dr. Avant confirms that the primary reason Dr. Carbajal was

paid more than Dr. Wilder was supposedly because more funds were available in the budget when he was hired. Whether or not that is a viable defense is considered in more detail below. *See infra* section IV.B.1.c. For now, Dr. Avant's declaration does not contradict SFA's earlier response, but supplements it. Quite literally, Dr. Avant says that Dr. Carbajal's doctoral status, certification, and previous experience were *additional* reasons for his higher salary. Doc. No. 55-1 at 31 ("In addition"). Hence, invoking the sham affidavit doctrine is not appropriate here.

  *c.*  *Rule 37*

  Similarly, Dr. Wilder asks the court to disregard the relevant portions of Dr. Avant's declaration because SFA failed to identify the same reasons for the pay differential in its interrogatory response. "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1).

  Here, Dr. Wilder has not been prejudiced by SFA's failure to supplement its interrogatory response. *See id.* ("unless the failure was . . . harmless"). In fact, Dr. Wilder has presented Dr. Bisping's 2018 report, in which he mentioned some of the same reasons to justify the difference in starting salaries. *See* Doc. No. 47-2 at 41-51. Furthermore, Dr. Wilder persuasively argues that SFA's proffered reasons are perhaps pretextual *because* they have changed over time in response to this lawsuit. Accordingly, Dr. Wilder's objections to Dr. Avant's declaration are **OVERRULED**. The court now turns to the Plaintiff's substantive claims.

**B.  Wage Discrimination Under Title VII and the Equal Pay Act**

**1.      Wage Discrimination Under the Equal Pay Act**

The Equal Pay Act ("EPA") proscribes discrimination "between employees on the basis of sex by paying wages to employees . . . at a rate less than the rate at which [the employer] pays wages to employees of the opposite sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d)(1). "[I]n order to establish a claim under the Equal Pay Act, the plaintiff must show (1) that her employer is subject to the Act; (2) that she performed work in a position requiring equal skill, effort and responsibility under similar working conditions; and (3) that she was paid less than members of the opposite sex." *Jones v. Flagship Int'l*, 793 F.2d 714, 722-23 (5th Cir. 1986).

Once the plaintiff establishes her prima facie case, the burden shifts to the defendant-employer to show that the differential is justified under one of the EPA's four enumerated exceptions. *Plemer v. Parsons-Gilbane*, 713 F.2d 1127, 1136 (5th Cir. 1983). These exceptions are: "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." 29 U.S.C. § 206(d)(1). "The exceptions are affirmative defenses on which the employer has the burden both of production and of persuasion." *Plemer*, 713 F.2d at 1136. "Unlike Title VII, the burden of persuasion may shift from the plaintiff to the defendant in a suit under the Equal Pay Act." *Jones v. Flagship Int'l*, 793 F.2d at 722; *accord Sauceda v. Univ. of Tex. at Brownsville*, 958 F. Supp. 2d 761, 779 (S.D. Tex. 2013).

### a.      The Burden Shifts to the Defendant

Here, "SFA concedes that [Dr.] Wilder can establish a *prima facie* case of wage discrimination" under the EPA (and Title VII). Def.'s Mot. Summ. J. at 14, Doc. No. 54. SFA is an employer subject to the EPA. Dr. Wilder and Dr. Carbajal held essentially the same assistant teaching positions in the SSW. It is undisputed that Dr. Wilder (a female) earned $3,575 less than Dr. Carbajal (a male) in each of the 2016-2017 and 2017-2018 academic years. Thus, the burden shifts to SFA to justify the pay differential using one of the Act's exceptions. SFA takes refuge in the fourth exception, arguing that "factor[s] other than sex" explain the pay disparity.

### b.      "Any Other Factor Other than Sex" Exception

"'Any factor other than sex' is a general, catch-all exception. The exception has been found to apply when the disparity results from unique characteristics of the same job; from an individual's experience, training or ability; or from special exigent circumstances connected with the business." *Wojciechowski v. Nat'l Oilwell Varco, L.P.*, 763 F. Supp. 2d 832, 852 (S.D. Tex. 2011) (quoting *Perales v. Am. Ret. Corp.*, No. SA-04-CA-0928, 2005 WL 2367772, at *6 (W.D. Tex. Sept. 26, 2005)).

First and foremost, SFA claims that it hired Dr. Carbajal at a higher salary than Dr. Wilder because Dr. Carbajal replaced a tenured Full Professor (whose departure freed up more funds in the budget), whereas Dr. Wilder replaced an Assistant Professor. SFA also claims that Dr. Carbajal began working at a higher salary because (1) Dr. Wilder did not have her Ph.D. in Sociology at the time she was hired, while Dr. Carbajal already had his Ph.D. in Social Work; (2) Dr. Carbajal had previous teaching experience at SFA; and (3) Dr. Carbajal had a certification which Dr. Wilder lacked. But those latter arguments did not surface clearly until SFA filed its motion for summary

judgment, along with Dr. Avant's recent declaration. Before SFA had clearly raised any other defenses, Dr. Wilder filed her motion for partial summary judgment. She asserts that SFA's "budget" defense fails as a matter of law.

        c.     *Market Forces Defense?*

SFA primarily argues that Dr. Wilder received a lower salary than Dr. Carbajal because SFA had more money available in the budget when it hired Dr. Carbajal. Dr. Carbajal replaced a Full Professor who had retired after 30 years of teaching. Naturally, that retiree had earned a higher salary over time, and so that professor's vacancy freed up a larger pool of funds in the budget. Dr. Wilder and Dr. Morris (male) both started working for SFA around the same time, and both replaced Assistant Professors. They started at the same salary, which was lower than Dr. Carbajal's starting salary, because there was less money in the budget for those assistant teaching positions. SFA's "budget" explanation seems to satisfy its burden to justify the pay disparity on the basis of "any other factor other than sex." 29 U.S.C. § 206(d)(1). But Dr. Wilder argues SFA cannot rely on such a defense because it is akin to the impermissible "market forces" defense.

In *Brennan v. City Stores, Inc.*, the Fifth Circuit Court of Appeals rejected a department store's defense that "the tighter market for salesmen and mail tailors" justified paying saleswomen and seamstresses less money. 479 F.2d 235, 241 n.12 (5th Cir. 1973). Put differently, the court suggested that defendants cannot avoid liability for paying employees of one sex more than the other by chalking it up to inherently discriminatory market practices. *See id.*

In *Siler-Khodr*, the Fifth Circuit affirmed the rule that the "market forces argument is not tenable and simply perpetuates the discrimination that Congress wanted to alleviate when it enacted the EPA." *Siler-Khodr v. Univ. of Tex. Health Sci. Ctr. San Antonio*, 261 F.3d 542, 549

14

(5th Cir. 2001). There, the court affirmed a verdict against a university for paying a female professor $20,000 less per year than a male professor in the same department. *Id.* at 544. The defendant tried to justify the wage differential by arguing that "the salary paid to a new employee is driven almost entirely by market forces," but the Fifth Circuit rejected that argument. *Id.* at 549.

Here, Dr. Wilder argues that SFA's "we had more money in the budget" defense fails as a matter of law because it is essentially a market forces argument. After all, if an employer coincidentally had more funds available every time it hired members of one sex but not the other, that defense would not pass muster. SFA has a strong response:

> The pool of money available to replace a Full Professor is larger than the pool of money available to replace an Assistant Professor regardless of the sex of the applicants for the respective positions. Under Wilder's theory, had SFA hired a female professor instead of Dr. Carbajal, then SFA's policy would have "discriminated" against Wilder's male colleague, Dr. Morris, who, like Wilder, was hired at a lower salary to replace an Assistant Professor. That the policy operates the same for both males and females establishes equal treatment, not sex discrimination.

Doc. No. 57 at 10. The court partially agrees. Saying "we had more money available that year" is different from saying "men are generally paid more in this market." The former recognizes financial limitations without regard to a prospective employee's sex, while the latter perpetuates a discriminatory industry practice. Therefore, the court is not willing to say that SFA's budget-line defense constitutes a "market forces" argument so as to fail as a matter of law.

Nonetheless, SFA's hypothetical would result in Dr. Morris bringing this suit instead of Dr. Wilder. The proper solution might have been for SFA to pay Dr. Carbajal the same salary as the other Assistant Professors, or to pay him more but raise all the other Assistant Professors' salaries to equalize them.  That is why the court cannot grant SFA summary judgment. There is a factual dispute over whether SFA's budget practices fostered discrimination on the basis of sex.

As explained below, a jury could ultimately find for the Plaintiff because SFA knew of a potentially unlawful pay disparity, but *chose not to fix it*.

Yet, SFA has presented additional gender-neutral explanations through Dr. Avant's declaration. Hiring considerations like prior experience and certifications are not based on sex. As such, SFA has met its burden to present a gender-neutral explanation, and the Plaintiff's motion for partial summary judgment must be denied.

### d.    Pretext?

If this were a Title VII claim, the court would proceed to the third step of the *McDonnell Douglas* framework, and the plaintiff would have the burden to show that the defendant's gender-neutral justifications are pretextual. *See infra* section IV.B.2. But the pretext step operates differently under the EPA because the defendant keeps the "burden of production and persuasion." *Sauceda v. Univ. of Tex. at Brownsville*, 958 F. Supp. 2d 761, 779 (S.D. Tex. 2013).

SFA argues that the burden should shift back to Dr. Wilder, as in a Title VII claim. Some older cases imply as such. *See, e.g.*, *Plemer*, 713 F.2d at 1137 n.8; *Phillips v. TXU Corp.*, 194 F. App'x 221, 224 (5th Cir. 2006) (stating that plaintiff's burden to show pretext applied to both his Title VII and EPA claims); *Perales*, 2005 WL 2367772, at *3 ("Once the employer establishes a defense, the employee may show that the purported reason is a pretext for discrimination.") (citing *Plemer*, 713 F.2d at 1137 n.8). But Dr. Wilder cites to a more recent decision from the Fifth Circuit for the proposition that the burden does not shift back to the plaintiff to show pretext on an EPA claim. According to Dr. Wilder, the burden remains on SFA to prove its affirmative defense by a preponderance of the evidence. And if factual disputes remain, the fact finder should decide whether SFA can prevail on its affirmative defense. The court tends to agree with Dr. Wilder.

In *Lindsley v. TRT Holdings, Inc.*, the Fifth Circuit compared pay discrimination claims under the EPA and Title VII. 984 F.3d 460 (5th Cir. 2021). "The burden shifting framework established in *McDonnell Douglas Corp. v. Green* governs these claims." *Lindsley*, 984 F.3d at 466 (internal citation omitted). Since the *McDonnell Douglas* framework includes the third step in which the plaintiff must show the defendant's pretext, one would think the burden would shift back to the plaintiff to show pretext in an EPA claim as well. But the court later clarified, "Under Title VII and the Texas Labor Code (*but not under the Equal Pay Act*), if the employer provides such a reason, *the burden* shifts back to the plaintiff to establish that the employer's stated reason is pretextual." *Id.* at 467 (emphasis added). A close reading of this sentence reveals that the parenthetical is referring to whether the burden shifts. Essentially, the court will always consider pretext if the analysis gets that far, but the burden never shifts back to the plaintiff in an EPA claim. *See Sauceda*, 958 F. Supp. 2d at 779-80.

Therefore, the impetus is on SFA to convince the court by a preponderance of the evidence that the pay disparity can be explained by factors other than sex. The court is not prepared to make that judgment call. On the one hand, SFA claims it had more money in the budget when it hired Dr. Carbajal, and that Dr. Carbajal had his doctorate and more experience than Dr. Wilder. On the other hand, Dr. Wilder had earned her Ph.D. by the time Dr. Carbajal was hired, and she had prior teaching experience at the University of North Texas. *See Siler-Khodr*, 261 F.3d at 548-49 (holding fact issues precluded summary judgment where evidence contradicted reasons given by university for pay disparity).

More importantly, SFA chose not to fix a known pay disparity. When SFA was hiring Dr. Carbajal, Dr. Avant sent an email to members of the administration. He noted that, although the budget allowed for Dr. Carbajal to have a higher starting salary, that would be inequitable because

17

four other professors (three of whom were female) in the same school, in the same assistant teaching positions, were being paid several thousand dollars less. *See* Doc. No. 60-1 at 11. Dr. Avant asked if it would be possible to pay Dr. Carbajal less, or to pay him more but give the other Assistant Professors raises to make all their salaries equal. For reasons that were not made clear in the email thread, that request was denied. *See id.* at 14.

To put it bluntly, Dr. Avant told administrators that a male professor would be making a few thousand dollars more than three female professors (and one male), and SFA chose not to address that problem. Another academic year went by, and still, SFA chose not to raise the salaries of the other professors to bring them in line with Dr. Carbajal's. SFA cannot allow discrimination to persist by merely pointing to bureaucratic rules about how its budget functions.

Furthermore, SFA did not point to Dr. Carbajal's previous experience and certifications until Dr. Wilder had already filed her summary judgment motion.[2] There are genuine factual disputes about whether SFA violated the EPA, and a jury could even decide that SFA willfully violated the Act in light of the fact that the university chose not to fix a wage gap over the course of two academic years.[3] Conversely, a jury could accept SFA's gender-neutral explanations and deny relief. For example, a jury could believe that SFA paid Dr. Carbajal more simply because he

---

[2] Dr. Bisping noted some of the same reasons in his 2018 report, but that report was only generated in response to Dr. Wilder's internal complaint about pay discrimination. The point is that there is little evidence contemporaneous with Dr. Carbajal's hiring to prove that these factors were considered by SFA when setting his salary. To the contrary, the contemporaneous evidence reflects that SFA was fully aware of the pay disparity.

[3] Dr. Wilder pleaded, in the alternative, willful and non-willful violations of the EPA. Doc. No. 19 ¶¶ 71-86; *see* FED. R. CIV. P. 8(d). A willful violation of the EPA occurs when "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 132-33 (1988). The biggest difference between the two is the statute of limitations: two years for non-willful and three years for willful. 29 U.S.C. § 255(a). This means a plaintiff could recover an additional year of backpay if the violation is willful. SFA claims this distinction is irrelevant here because Dr. Wilder and Dr. Carbajal only overlapped for two academic years. Even if SFA willfully violated the Act, Dr. Wilder cannot recover for a third year because she only suffered unequal pay for two years. If the jury finds a willful violation, that has symbolic value, but SFA's point that it will not augment the damages award is well taken.

was better qualified. Thus, the parties' motions for summary judgment with respect to the unequal pay claims under the EPA must be denied.

### 2.  Wage Discrimination Under Title VII

A wage discrimination claim under Title VII largely mirrors a wage claim under the EPA, with the exception that the burden shifts back to the plaintiff to show evidence of pretext:

> Title VII prohibits discrimination in compensation based on an individual's sex. To establish a prima facie case for pay discrimination under Title VII, the plaintiff must show that he or she occupies a job similar to that of higher paid workers of the opposite sex. Once a prima facie case is established, the defendant must articulate a legitimate, non-discriminatory reason for the pay disparity. This burden is exceedingly light; the defendant must merely proffer non-gender based reasons, not prove them. Once such a justification is advanced, the plaintiff must demonstrate by a preponderance of the evidence that the employer had a discriminatory intent.

*Wojciechowski v. Nat'l Oilwell Varco, L.P.*, 763 F. Supp. 2d 832, 854 (S.D. Tex. 2011). A plaintiff can show that the employer's proffered nondiscriminatory reason is false or "unworthy of credence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000). Further, an employer's inconsistent explanations for an adverse employment action are also evidence of pretext. *See Taylor v. Cnty. Bancshares, Inc.*, 325 F. Supp. 2d 755, 773-74 (E.D. Tex. 2004) (collecting cases). A plaintiff can also show "that the defendant's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic." *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 309 (5th Cir. 2004).

Under Title VII too, SFA concedes that Dr. Wilder has established a prima facie case of wage discrimination. The burden shifts to SFA to present a legitimate reason for the pay differential. SFA has met that burden. Dr. Wilder and Dr. Morris were hired at the same time to replace Assistant Professors, and both received the same starting salary despite being members of

the opposite sex. This gives credence to SFA's argument that Dr. Carbajal received a higher salary because he was hired in a later year when more funds were available for his position. Furthermore, SFA has pointed to additional nondiscriminatory reasons why Dr. Carbajal was paid more. Therefore, the burden shifts back to Dr. Wilder to demonstrate that SFA's reasons are mere pretext for discrimination.

Dr. Wilder has met that burden. With regard to SFA's "budget" defense, Dr. Wilder has shown that SFA may have ignored a clear pay disparity. Dr. Wilder has also shown that SFA's other defenses might be pretextual. It is curious that Dr. Avant's declaration, which most clearly states all the alleged reasons Dr. Carbajal earned a higher salary, did not appear until Dr. Wilder had already filed her motion for summary judgment. A jury could find that SFA's defenses have been formulated in response to this lawsuit, given that SFA's explanations for the wage disparity have changed over time. *See Taylor*, 325 F. Supp. 2d at 773. Therefore, SFA's motion for summary judgment must be denied with respect to Dr. Wilder's unequal pay claims under Title VII as well.

### C.  Sex Discrimination Under Title VII

To establish a prima facie case of discrimination using circumstantial evidence, the plaintiff must prove that (1) she belongs to a protected class; (2) she was qualified for the position; (3) she experienced an adverse employment action; and (4) she was treated less favorably than were other similarly situated employees who were not members of the protected class. *Outley v. Luke & Assocs.*, 840 F.3d 212, 216 (5th Cir. 2016); *Willis v. Cleco Corp.*, 749 F.3d 314, 320 (5th Cir. 2014). If the plaintiff establishes a prima facie case, the burden shifts to the employer to show it had a legitimate, nondiscriminatory reason for the adverse employment action. If the defendant satisfies this burden, the plaintiff must prove that the employer's stated reason for the adverse action was merely a pretext for the real, discriminatory purpose, or that the plaintiff's protected

characteristic was another motivating factor. *Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir. 2007).

As a female who was qualified for the assistant teaching position, Dr. Wilder satisfies the first two elements. SFA concedes that issuing her a terminal contract was an adverse employment action, but Dr. Wilder complains of other forms of recourse that do not rise to the level of adverse employment actions. While those actions are relevant to her retaliation and terminal contract claims, they do not state sufficient claims by themselves. Accordingly, SFA is entitled to summary judgment on those claims. Finally, SFA argues that Dr. Wilder cannot establish the fourth element of her terminal contract claim because she cannot point to a proper comparator. But Dr. Wilder has identified a proper comparator in the form of another male professor who kept his job despite receiving similar complaints.

### 1.    Disparate Treatment Claims that Are Not Actionable

Dr. Wilder mainly alleges that SFA discriminated against her on the basis of her sex by issuing her a terminal contract, whereas SFA would not have done the same to a male professor who had received similar complaints. SFA concedes that issuing Dr. Wilder a terminal contract was an adverse employment action. But Dr. Wilder also alleges disparate treatment in the *way* SFA handled her student complaints. *See* Am. Compl. ¶¶ 93-104, Doc. No. 19. She complains about being suspended from teaching for a semester, having her office moved to the library, and not being able to select her desired class times. *Id.* ¶¶ 95, 108. SFA argues these "other alleged adverse employment actions in support of her disparate treatment claim are not actionable." Def.'s Mot. Summ. J. at 18, Doc. No. 54. The court agrees with SFA.

In the context of Title VII discrimination claims (as opposed to retaliation claims), only "ultimate employment decisions" such as hiring, granting leave, discharging, promoting, and compensating are actionable adverse employment actions. *McCoy v. City of Shreveport*, 492 F.3d 551, 559-60 (5th Cir. 2007); *see also Cardenas-Garcia v. Tex. Tech. Univ.*, 118 F. App'x 793, 794 (5th Cir. 2004).  "Performance reviews and investigations, therefore, do not qualify as ultimate employment actions." *Cardenas-Garcia*, 118 F. App'x at 794.

Hence, Dr. Wilder cannot pursue sex discrimination claims to the extent they are not predicated on the decision to issue her a terminal contract. She cannot recover *solely* because SFA may have (1) treated her differently in the way that it investigated her complaints, (2) relegated her to an office in the library, or (3) prevented her from teaching her desired classes. Dr. Wilder does not controvert this point in her response to SFA's summary judgment motion, and she therefore waives any arguments in this regard. *See Burrell v. Prudential Ins. Co.*, 820 F.3d 132, 140 (5th Cir. 2016). SFA is entitled to summary judgment on these unactionable claims. To be clear, however, Dr. Wilder can still introduce evidence of these alleged actions insofar as they relate to her terminal contract, retaliation, or unequal pay claims.

### 2.    Unlawful Termination Claim

Now to the heart of Dr. Wilder's sex discrimination claim—unlawful termination. SFA concedes that issuing Dr. Wilder a terminal contract was an actionable adverse employment action. In order to establish her prima facie case, Dr. Wilder need only satisfy the remaining fourth element—that others similarly situated were treated more favorably. She needs to show that she was treated less favorably than a similarly situated male professor. SFA asserts that Dr. Wilder cannot point to a proper comparator, but the court finds that she has.

a.      *Similarly Situated Standard*

In the Fifth Circuit, "an employee who proffers a fellow employee as a comparator [must] demonstrate that the employment actions at issue were taken 'under nearly identical circumstances.'" *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009) (quoting *Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir. 1991)). "The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories." *Id.* at 260 (citations omitted).

"Similarly situated individuals must be 'nearly identical' and must fall outside the plaintiff's protective class." *Lopez v. Kempthorne*, 684 F. Supp. 2d 827, 857 (S.D. Tex. 2010). However, "nearly identical" does not mean "identical." *Lee*, 574 F.3d at 260. "For example, it is sufficient that the ultimate decisionmaker as to employees' continued employment is the same individual, even if the employees do not share an immediate supervisor." *Id.* at  260-61.

That being said, "[e]mployees with different supervisors, who work for different divisions of a company or who were the subject of adverse employment actions too remote in time from that taken against the plaintiff generally will not be deemed similarly situated." *Id.* at 259 (citing *Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296, 302 (5th Cir. 2000)). "Likewise, employees who have different work responsibilities or who are subjected to adverse employment action for dissimilar violations are not similarly situated." *Id.* at 259-60 (citing *Smith v. Wal-Mart Stores (No. 471)*, 891 F.2d 1177, 1180 (5th Cir. 1990)).

<i>b.      Dr. Kronrad Is a Proper Comparator</i>

Dr. Wilder has identified Dr. Gary Kronrad (male) as a proper comparator who may have been treated more favorably. Therefore, Dr. Wilder has established a prima facie case of unlawful termination under Title VII because she has satisfied the fourth and final element.

Dr. Kronrad was a tenured professor in the College of Forestry. Like the School of Social Work, the College of Forestry is housed within the College of Liberal and Applied Arts. In 2014, six students filed complaints against Dr. Kronrad, similar to how six students filed a complaint against Dr. Wilder in 2017. Dr. Bullard, who was the Dean of Forestry before he became the Provost, investigated the complaints against Dr. Kronrad. The complaints alleged that Dr. Kronrad was overbearing, intimidating, and confrontational, like a "military drill sergeant." Doc. No. 60-7 at 37. Dr. Bullard found that Dr. Kronrad's confrontational style manifested in his interactions with students and faculty, similar to how students and faculty complained about Dr. Wilder's hostile attitude toward them. <i>See id.</i>

As a result of Dr. Bullard's investigation, Dr. Kronrad received an unsatisfactory evaluation, and he was not allowed to teach a capstone course. But Dr. Bullard did not recommend termination. On the other hand, Dr. Bullard signed Dr. Wilder's terminal contract despite the fact that the Discrimination Review Board had reversed Dr. Bisping's finding that she engaged in harassment. And that finding rested on the same SFA policy applicable to all professors—tenured or probationary. <i>See</i> Dr. Bullard Dep. 20:10-21:11.

SFA argues that Dr. Kronrad cannot be compared to Dr. Wilder because Dr. Kronrad was a tenured professor and Dr. Wilder was not. SFA even cites <i>Krystek v. University of Southern Mississippi</i>, 164 F.3d 251, 257 (5th Cir. 1999), for the proposition that faculty members can never

be similarly situated when they do not hold the same tenure status. But the Fifth Circuit has never stated such a rule. In *Krystek*, the plaintiff was denied tenure because he failed to publish any peer-reviewed work. *Id.* at 253-54. The court held that Krystek had not identified any comparators because he could not point to a single female professor who had been given tenure despite failing to publish scholarly work. *See id.* at 257-58. The Fifth Circuit did not hold that assistant professors can never be similarly situated to tenured professors. To the contrary, the court implied that a proper comparator in that case would have been a female *tenured* professor who had not published any scholarly work before becoming tenured. *Id.* at 257 ("Krystek cannot point to a single tenured faculty member who has not published scholarly work.").  So Dr. Kronrad's tenure status does not foreclose the possibility of him being similarly situated to Dr. Wilder.

SFA correctly points out that Wilder, as an Assistant Professor, could have received a terminal contract for any reason or no reason at all, whereas Kronrad, as a tenured professor, could only be dismissed for good cause. But what matters more so is the fact that both professors were subject to the same harassment policies. Furthermore, Dr. Bullard indeed found that Dr. Kronrad had violated SFA's policy.

Both Dr. Kronrad and Dr. Wilder taught classes within the College of Liberal and Applied Arts between 2014 and 2018. Both received complaints from students and faculty about their confrontational or intimidating attitudes. *See Lee*, 574 F.2d at 260 ("essentially comparable violation histories"). Those complaints prompted investigations, and Dr. Bullard was the ultimate decisionmaker for both of them. *See id.* at 261 ("it is sufficient that the ultimate decisionmaker . . . is the same individual"). Dr. Kronrad's harassment findings were sustained, whereas Dr. Wilder's findings were reversed by the Discrimination Review Board. Yet Dr. Kronrad (male) only lost his teaching privileges, whereas Dr. Wilder (female) was issued a terminal contract.

A reasonable jury could find that Dr. Kronrad was a similarly situated male who was treated more favorably under nearly identical circumstances.

        *c.*       *The Burden Shifts to SFA*

Moving to the second *McDonnell Douglas* step, SFA has the burden to produce a legitimate, nondiscriminatory reason for issuing Dr. Wilder her terminal contract. SFA has identified such a reason. SFA points to nearly 100 pages of complaints from students and faculty against Dr. Wilder during her time at SFA. Without going into too much detail, the complaints paint a very bad picture. Other professors described dreading going into work if Dr. Wilder's car was in the parking lot. And several students described uncomfortable classes in which Dr. Wilder allegedly made aggressive remarks towards them. Some students even claimed that Dr. Wilder harassed them outside of class by discouraging them from visiting office hours, or harassing them with messages late at night.

Again, these complaints are not being offered for the truth of the matter, but to show SFA had a nondiscriminatory reason for refusing to renew Dr. Wilder's contract. If SFA offered Dr. Wilder a terminal contract because SFA thought Dr. Wilder's behavior was unacceptable, that makes it more likely that SFA did not make the same decision on the basis of her sex.

        *d.*       *Pretext*

Since SFA has presented a nondiscriminatory justification for its adverse employment decision, the burden shifts to Dr. Wilder to demonstrate that the Defendant's reasons are mere pretext. Dr. Wilder has raised enough conflicting evidence to call SFA's reasons into doubt.

First, a jury could refuse to believe SFA's justification because Dr. Wilder had been receiving complaints since she started teaching at SFA in 2014. It is curious that Dr. Wilder

received complaints for years without being terminated, but only a month after she formally reported discrimination, she was offered the terminal contract, with the complaints being the reason for her discharge. SFA might say that the complaints she received in 2017 were more severe, but a jury should decide whether to believe SFA. Second, Dr. Kronrad received similar complaints about his intimidating behavior, but he was not terminated. That fact makes it more likely that Dr. Wilder's sex was at least a motivating factor in the decision to issue her the terminal contract. Therefore, SFA is not entitled to summary judgment on Dr. Wilder's unlawful termination claim under Title VII.

## D.  Retaliation Under Title VII and the Equal Pay Act

### 1.    Framework

"Both the Equal Pay Act and Title VII prohibit retaliation against an employee for complaining about prohibited discrimination." *Gentry v. Jackson State Univ.*, 161 F. Supp. 3d 418, 420 (S.D. Miss. 2015) (citing 29 U.S.C. § 215(a)(3); 42 U.S.C. § 2000e-3(a)).  "Retaliation claims under Title VII are governed by the familiar three-step *McDonnell Douglas* test." *LeMaire v. La. Dep't Transp. & Dev.*, 480 F.3d 383, 388 (5th Cir. 2007) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973)).  To establish a retaliation claim under Title VII or the EPA, a plaintiff must demonstrate that (1) she engaged in protected activity; (2) she experienced an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action.  *Fisher v. Lufkin Indus., Inc.*, 847 F.3d 752, 757 (5th Cir. 2017); *see also Lindsley v. TRT Holdings, Inc.*, 984 F.3d 460, 469 (5th Cir. 2021) ("We analyze retaliation claims under Title VII, the Texas Labor Code, and the FMLA pursuant to the *McDonnell Douglas* burden-shifting framework, and we are offered no reason why we should not do the same under the Equal Pay Act.").

27

For the causal connection element, "[i]f an adverse employment action occurs within close temporal proximity to protected activity known to the employer, a plaintiff will have met her burden to establish a prima facie case of retaliation." *Badgerow v. REJ Props., Inc.*, 974 F.3d 610, 619 (5th Cir. 2020); *see also Garcia v. Pro. Contract Servs., Inc.*, 938 F.3d 236, 243 (5th Cir. 2019) (holding that a period of two and a half months between the protected activity and the adverse employment action was sufficient to show causal connection).

"Assuming the plaintiff is able to establish her prima facie case, the burden then shifts to the defendant to demonstrate a legitimate nondiscriminatory purpose for the employment action. If the defendant satisfies this burden, the plaintiff must prove that the employer's stated reason for the adverse action was merely a pretext for the real, discriminatory purpose." *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002) (citations omitted); *see also Septimus v. Univ. of Houston*, 399 F.3d 601, 607 (5th Cir. 2005).

## 2. Prima Facie Case

SFA concedes that Dr. Wilder engaged in protected activity when she filed a written complaint with HR on June 19, 2018. Next, SFA admits she experienced an adverse employment action when she received a terminal contract. But SFA argues that Dr. Wilder cannot establish a causal connection between the protected activity and the adverse employment action.

SFA argues that "the decision to terminate her had already been set in motion," meaning that it could not have possibly *retaliated* against her for a complaint that had yet to exist. Doc. No. 54 at 21. For example, Dean Murphy recommended that Dr. Wilder be dismissed in January of 2018, well before her June 19 complaint. Next, Dr. Avant stated in his declaration that on June 6, 2018, he "participated in the decision to issue Dr. Wilder a terminal contract for the 2018-2019

Academic Year." Doc. No. 55-1 at 31. He declared that he "had no knowledge of any complaints from Dr. Wilder regarding any complaint about pay disparity" at the time. *Id.*

Dr. Wilder responds that she has established a causal connection between her protected activity and the adverse employment action. First, Dean Murphy's recommendation of dismissal back in January of 2018 was based on his finding that Dr. Wilder had violated SFA's harassment policy—a finding later reversed by the Discrimination Review Board. Second, no one has corroborated Dr. Avant's statement that the decision to issue a terminal contract was made on June 6, 2018. Even if that were true, SFA admitted in its Amended Answer that "Plaintiff informally complained to her supervisors, including Dr. Oliphant and Director Avant, beginning in March 2018." *Compare* Am. Compl. ¶ 87, Doc. No. 19, *with* Am. Answer ¶ 87, Doc. No. 33. So either the decision was made on June 6, and thus came within three months of her informal complaint in March, or the decision was made in July, about a month after Dr. Wilder filed her formal complaint with HR. Both suggest "close temporal proximity" between the protected activity and the adverse employment decision. *But see Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268 (2001) (suggesting that three months was insufficient).

Additionally, Dean Murphy testified during his deposition that, although he and Dr. Avant "have a say" in hiring decisions, the Provost, Dr. Bullard, is the final decision maker. Murphy Dep. 22:6-12. It is undisputed that Dr. Bullard knew about Dr. Wilder's discrimination complaint when he made the decision to offer her a terminal contract. In fact, he had personally assigned Dr. Bisping to investigate the June 19 complaint. So he was well aware that Dr. Wilder had complained about pay discrimination when he signed her terminal contract on July 24, 2018. That decision was knowingly made within a month or so of her complaint. That is sufficient for causal connection

under the Fifth Circuit's precedents. *See Badgerow*, 974 F.3d at 619; *Garcia*, 938 F.3d at 243. Therefore, Dr. Wilder has established a prima facie case of retaliation under Title VII and EPA.

### 3.      Final Steps

As previously mentioned, SFA has proposed a legitimate, nondiscriminatory reason for issuing Dr. Wilder a terminal contract. SFA claims it refused to renew her contract due to numerous complaints about her attitude toward students. Again, Dr. Wilder has shown that justification might be pretextual, or at least that the decision to terminate her was based on mixed motives. There are genuine disputes of material fact about when SFA decided to offer Dr. Wilder her terminal contract, and whether that decision was in retaliation for reporting pay discrimination. Thus, the court denies SFA's motion for summary judgment with respect to the retaliation claims under Title VII and the EPA.

### E.  Motion to Exclude Evidence of Damages

SFA moves to exclude evidence of certain damages. Doc. No. 53. Namely, SFA seeks to exclude Dr. Wilder's claims for (1) backpay, (2) front pay, (3) expenses incurred in seeking other employment and moving across the country, (4) loss of social security benefits, and (5) pay-differential damages after August 2018 because Dr. Wilder left SFA.[4]

---

[4] "Note, SFA has not sought to exclude any other damages, such as the pay-differential damages prior to August 2018; liquidated damages under the EPA; attorney's fees; statutory damages under Title VII, and non-economic damages." Pl.'s Resp. at 2, Doc. No. 56.

## 1.      Types of Damages No Longer at Issue

Dr. Wilder has decided to forego her claims for (1) back pay, (3) relocation expenses, (4) loss of social security benefits, and (5) pay-differential damages after August 2018.[5] *See* Pl.'s Resp. at 2-4, Doc. No. 56. Accordingly, SFA's motion is granted as unopposed with respect to those kinds of damages.

## 2.      Front Pay

Dr. Wilder contests, however, that she should be allowed to recover (2) front pay. Front pay is an equitable remedy to be determined by the court; it is not awarded by the jury. *See Julian v. City of Houston*, 314 F.3d 721, 729 (5th Cir. 2002); *Deloach v. Declhamps, Inc.*, 897 F.2d 815, 823-24 (5th Cir. 1990) ("As an equitable remedy under federal law, we believe that it was within the district court's discretion to determine the amount of the front pay award."). "[F]ront pay is simply money awarded for lost compensation during the period between judgment and reinstatement or in lieu of reinstatement." *Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 846 (2001). "For instance, when an appropriate position for the plaintiff is not immediately available without displacing an incumbent employee, courts have ordered reinstatement upon the opening of such a position and have ordered front pay to be paid until reinstatement occurs." *Id.* at 846.

"Although reinstatement is the preferred equitable remedy for a discriminatory discharge, [the Fifth Circuit] has held that front pay—money awarded for future lost compensation—is appropriate when reinstatement is not feasible." *Julian*, 314 F.3d at 728. "[F]ront pay is a

---

[5] "Dr. Wilder agrees that, due to the fact she secured another position, she is not entitled to recover the pay differential between her and Jose Carbajal, Ph.D. (the male comparator) after August 2018." *Id.* at 4.

prospective remedy that estimates the damage plaintiff will continue to suffer after the date of final

judgment as a result of the wrongdoing." *Palasota v. Haggar Clothing Co.*, 499 F.3d 474, 490-91

(5th Cir. 2007); *see also Floca v. Homcare Health Servs., Inc.*, 845 F.2d 108, 112 (5th Cir. 1988)

("Front pay is a remedy for the postjudgment effects of discrimination. It compensates the plaintiff

for lost income from the date of the judgment to the date the plaintiff obtains the position she

would have occupied but for the discrimination.").

Although district courts have wide latitude in determining whether and to what extent they

should award front pay, courts should strongly consider whether such an award would result in a

windfall. *See Palasota*, 499 F.3d at 491; *Julian*, 314 F.3d at 728-30; *see also Giles v. Gen. Elec.

Co.*, 245 F.3d 474, 494-95 (5th Cir. 2001) (affirming district court's decision to offset, from the

front pay award, other damages the plaintiff already won due to his inability to work in the future).

Here, a front pay award would deliver a windfall to the Plaintiff. It is undisputed that Dr.

Wilder secured a comparable position at another university, where in fact, she earned a higher

salary ($58,088 compared to $54,425). She does not need to be made whole for time spent in the

future waiting on reinstatement, or searching for another job, because she moved to other positions

with higher pay. *See Forrest v. Dynamic Sec. Corp.*, No. Civ.A. 00-3423, 2002 WL 1204917, at

*14 (E.D. La. May 2, 2002) ("Smith is also not entitled to front pay because she is better off in her

new job than she was at Dynamic."). Therefore, SFA's motion to exclude evidence of damages is

granted with respect to front pay as well.

### 3.    Expert Opinion on Compensation

One issue remains. In one sentence, SFA asks the court to exclude "the compensation

opinion of Wilder's designated expert, Thomas W. Glass, Ph.D., CPA," because he estimated

damages through August 2019 in his expert report. Doc. No. 53 at 3. That request is denied. If the expert's damages estimate is too high because his model considers an extra year's worth of pay, that is fertile ground for cross examination, not a last-minute strike.  SFA's motion to exclude damages is thus denied on that basis.

## V.   CONCLUSION

It is, therefore, **ORDERED** that Plaintiff Ann Wilder's *Motion for Partial Summary Judgment* (Doc. No. 47) is **DENIED**.

It is further **ORDERED** that Defendant SFA's *Motion for Summary Judgment* (Doc. No. 54) is **GRANTED AND DENIED IN PART**. The motion is **GRANTED** with respect to Plaintiff's disparate treatment claims that are not based on adverse employment actions. Those claims are **DISMISSED**, though the underlying conduct alleged may be relevant to Plaintiff's other claims. The motion is **DENIED** with respect to all of the Plaintiff's remaining claims under Title VII and/or the Equal Pay Act.

It is further **ORDERED** that Defendant SFA's *Motion to Exclude Evidence of Damages* (Doc. No. 53) is **GRANTED AND DENIED IN PART**. At trial, Dr. Wilder may not recover damages in the form of (1) backpay, (2) front pay, (3) expenses incurred in seeking other employment and moving across the country, (4) loss of social security benefits, and (5) pay-differential damages after August 2018. The motion is **DENIED** insofar as SFA moves to strike the opinion of Dr. Wilder's designated expert, Thomas W. Glass, Ph.D., CPA, on the basis that he estimated compensatory damages through August of 2019.

SIGNED this 2nd day of August, 2021.

Zack Hawthorn
United States Magistrate Judge

33